**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GARY GERMAN,

    Plaintiff,

vs.                                                CASE NO. 3:06-cv-246-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB"). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #25). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #26). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated August 28, 2008 (Doc. #29). The Commissioner has filed the transcript of the proceedings (hereafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

In the instant action, Plaintiff protectively filed an application for DIB on August 27, 2002, alleging disability beginning June 13, 2000 (Tr. 30, 702). In a decision dated April 6, 2004, a prior ALJ determined Plaintiff was not disabled under this particular claim (Tr. 19-29). Plaintiff requested that the Appeals Council review the April 6, 2004 ALJ decision (Tr. 10). While Plaintiff's request for review was pending, Plaintiff filed a subsequent claim for disability benefits (*see* Tr. 711). Pursuant to this application, the Commissioner determined that Plaintiff became disabled as of May 14, 2005 (*see* Tr. 711).[2]

Subsequently, on January 18, 2006, the Appeals Council denied Plaintiff's request for review of the April 6, 2004 ALJ decision related to Plaintiff's first claim (Tr. 6-9). Plaintiff appealed to this Court (Doc. #1) and submitted new and material evidence in the form of a May 17, 2004 psychological evaluation by Robert B. David, Ph.D. ("Dr. David") (Tr. 662-63). Based on this new evidence, the Court remanded the cause under sentence six of 42 U.S.C. § 405(g) for further administrative proceedings (Doc. #13; Tr. 705-06).

On October 11, 2007, the ALJ convened a supplemental hearing (Tr. 808-44). The period at issue began with Plaintiff's alleged onset date of June 13, 2000 and ended on May 13, 2005, the day before the Commissioner issued the favorable decision on the subsequent claim (Tr. 61, 691, 702, 711). Plaintiff appeared and testified at the

---

[2]Plaintiff was awarded benefits on this application based on his back disorder at Step 5 of the sequential evaluation process pursuant to Grid Rule 201.10 (Tr. 713; *see also* Doc. #25 at 3).

supplemental hearing, as did vocational expert Paul R. Dolan (the "VE") (Tr. 808). Plaintiff was represented at the hearing by Pamela Dunmore, a non-attorney (Tr. 808). On December 18, 2007, Administrative Law Judge JoAnn L. Anderson ("the ALJ") issued a final decision and determined that Plaintiff was not disabled at any time during the period of June 13, 2000 through May 13, 2005 (Tr. 691-702). Plaintiff now appeals the Commissioner's final decision.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[3] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

---

[3]All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving

4

disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Discussion

Plaintiff was 44 years old on his alleged onset date, and was 49 years old on May 13, 2005, the last day of the period at issue (Tr. 30, 702). Plaintiff has past relevant work experience as a construction worker, roofer, welder, and tile setter helper (Tr. 700, 752, 839). Plaintiff's roofer and welder jobs were identified by the VE as skilled occupations (Tr. 752, 839).[4] The ALJ found that Plaintiff had the following severe impairments: status-post pelvic fracture; degenerative disc disease; history of coronary artery disease; and a cognitive disorder (Tr. 693-94).

The sole issue before the undersigned is whether the ALJ erred by not finding Plaintiff met or medically equaled Listing 12.05, mental retardation, pursuant to 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Doc. #25 at 9-11). Specifically, Plaintiff argues that his I.Q. scores and school records demonstrate that he has satisfied the requirements

---

[4]Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed. 20 C.F.R. § 404.1568(c). Skilled work may require making precise measurements; reading blueprints; making computations or mechanical adjustments; and/or dealing with people, facts, figures, or abstract ideas at a high level of complexity. 20 C.F.R. § 404.1568(c).

5

promulgated under Listing 12.05, mental retardation (Doc. #25 at 9-11).[5] The undersigned, however, is not persuaded by Plaintiff's argument.

> To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (*quotations and citations omitted*); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 416.925, 416.926. The evidentiary standards for presumptive disability under the listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. §§ 416.920, 416.926, 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Pursuant to Listing 12.05, mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period (*i.e.* before age twenty-two). The required level of severity for this disorder is met when the requirements in subparagraphs A, B, C, or D are satisfied. Subparagraph A requires evidence of dependence on others for personal needs such as bathing and dressing.[6]

---

[5] Plaintiff's school records reveal that Plaintiff participated in special education classes during high school (Tr. 748-51).

[6] Plaintiff represented that he is able to take care of his own personal hygiene without assistance (Tr. 528).

Subparagraph B requires a valid, verbal, performance, or full scale I.Q. of 59 or less; and subparagraphs C and D require a valid, verbal, performance, or full scale I.Q. score of 60 through 70 and, in addition, require that the individual's low I.Q. results in **two** of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(B), (C), (D) (*emphasis added*).

Mental retardation denotes a lifelong condition characterized by below-average intellectual endowment as measured by well standardized I.Q. tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(5)(a). The degree of impairment should be determined primarily on the basis of intelligence testing and its accompanying medical report; however, care should be taken to ascertain that test results are consistent with daily activities and behavior. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(5)(c).

Here, Dr. David's May 17, 2004 psychological report reveals that Plaintiff achieved I.Q. scores of 59 verbal, 64 performance, and 58 full scale on the Wechsler Adult Intelligence Scale–Third Edition ("WAIS–III) (Tr. 662). Dr. David indicated that he deemed said test results were valid and indicative of Plaintiff's current level of functioning (Tr. 662). Dr. David also indicated that, in his opinion, Plaintiff's level of cognitive functioning operated toward the lower end of the range of mild retardation (Tr. 662). On July 13, 2006, the Commissioner sought voluntary remand of this matter based on this evidence (Doc. #13).

Listing 12.00 provides that the Wechsler Adult Intelligence Scale series is a well

standardized comprehensive intelligence test appropriate for I.Q. determinations. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(6)(c). In addition, said provision states that, where more than one I.Q. level is derived from the testing, *e.g.*, verbal, performance and full scale I.Q. scores, the lowest of these should be used in conjunction with 12.05, mental retardation. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(D)(6)(c).

Here, it is clear that Plaintiff's full scale I.Q. score of 58, if valid, should be the I.Q. score used in applying Listing 12.05. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). Upon remand, however, the ALJ found Plaintiff's I.Q. scores were not a valid representation of Plaintiff's cognitive abilities (Tr. 694-95).

In her decision, the ALJ correctly noted that the Listing 12.05 does not require the Commissioner to make a finding that the Listing is met based solely on the results of I.Q. tests (Tr. 694-95). *See Popp*, 779 F.2d at 1499. I.Q. test results must be consistent with a plaintiff's daily activities and behavior. *Id.* Additionally, the Eleventh Circuit has held that when a plaintiff presents a valid I.Q. score in the range prescribed by Listing 12.05, then that plaintiff creates a rebuttable presumption that the impairment is lifelong and existed during the developmental period. *Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001). Under *Hodges*, however, the Commissioner can present activities in the daily life of a plaintiff to rebut the presumption of a lifelong impairment. *Id.*

Under the facts presented, the ALJ discussed evidence which undermines the validity of Plaintiff's I.Q. scores, *supra*, and which rebuts the presumption that Plaintiff's limited cognitive function has been lifelong and existed during the developmental period (Tr. 694-98).

To illustrate, the ALJ determined Plaintiff's activities of daily living were not

consistent with his I.Q. scores (Tr. 694-95, 699-700). First, the ALJ determined Plaintiff's I.Q. scores and Dr. David's conclusion that Plaintiff is mentally retarded is not consistent with Plaintiff's ability to perform work at all skill levels (Tr. 695). The ALJ pointed out that Plaintiff's work as a roofer and welder were both skilled positions (Tr. 695, 839). Under the Regulations, skilled work involves using judgment, and it may involve doing layout work, making precise measurements, and reading blue prints. 20 C.F.R. § 404.1568(c). Skilled work may also require dealing with people, facts or figures, or abstract ideas at a high level of complexity. 20 C.F.R. § 404.1568(c). An ALJ may consider a plaintiff's work history as a factor to discount his or her allegation of mental retardation. *Outlaw v. Barnhart*, 197 Fed. Appx. 825, 827 (11th Cir. 2006).[7]

Second, the ALJ found Plaintiff's credibility regarding his cognitive functioning is questionable since Plaintiff testified that he is essentially unable to read and write; however, Plaintiff indicated in his initial disability paperwork that he can read and write (Tr. 60, 662, 695, 824). The ALJ also noted that Plaintiff told Michael Amiel, M.D. ("Dr. Amiel"), that he is able to read (Tr. 382, 695). Moreover, the ALJ noted that Plaintiff reported he helps his son do homework (Tr. 383, 528, 695).

Third, although the record reveals Plaintiff participated in special education classes during high school, the ALJ pointed out that Plaintiff made satisfactory grades in those classes (Tr. 695, 748-51).[8] The ALJ further pointed out that, although Plaintiff testified that he was not promoted to the twelfth grade, he later admitted that he withdrew from school

---

[7]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

[8]Plaintiff made predominantly B's and C's (Tr. 748-51).

9

before the twelfth grade in order to move to Florida, and that he merely never returned to school (Tr. 695, 831-32).

Fourth, the ALJ found Plaintiff engages in daily activities that are not consistent with mental retardation (Tr. 699). For instance, Plaintiff testified that he was able to wash dishes and launder clothing (Tr. 699, 828-29). Plaintiff also stated that he used drilling equipment and engaged in wood crafts in his shed (Tr. 383, 528, 699). In addition, the undersigned's independent review of the record reveals that treatment notes from the Back & Neck Pain Clinic, dated November 1, 2002, and November 15, 2002, indicate Plaintiff hurt his back while trying to install a sensor light (Tr. 652). A July 30, 2003, note indicated that Plaintiff was "attempting work with Motor Power Welding" (Tr. 652). Plaintiff also reported that he was able to obtain a driver's license (Tr. 528).

Lastly, the ALJ referenced Plaintiff's assessed Global Assessment of Functioning score of 60 as not indicative of someone who is mentally retarded (Tr. 388, 696).[9] Further, the ALJ went on to determine that Plaintiff's mental impairment(s) only result in: (1) mild restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation of extended duration (Tr. 696). The ALJ based this determination on Plaintiff's GAF score of 60 and on the opinions of state agency

---

[9]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

psychological consultants who found Plaintiff's mental impairment(s) only result in: (1) mild restrictions in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation of extended duration (Tr. 696; *see also* Tr. 388, 543, 565). Consequently, the ALJ found Plaintiff did not meet the required "marked" limitations (or episodes of decompensation) in any of the areas required under subparagraphs C or D of Listing 12.05, *supra* (Tr. 696). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(C), (D). As set forth above, the undersigned finds this determination to be supported by substantial evidence of record.

In sum, the ALJ was not required to find Plaintiff was mentally retarded based solely on the results of his I.Q. test. *Popp*, 779 F.2d at 1499. An ALJ is required to examine the results of an I.Q. test in conjunction with other medical evidence and the claimant's daily activities and behavior. *Id.* Based on the foregoing, the undersigned finds there is substantial evidence in the record to support the ALJ's finding that the results of Plaintiff's I.Q. test were not a valid representation of Plaintiff's cognitive abilities because said scores were inconsistent with other evidence of record. Plaintiff's ability to work in skilled occupations, his reported ability to read, his reported ability to help his son with homework, and his ability to use power tools and make wood crafts were activities the ALJ found were not consistent with mental retardation (Tr. 694-95). Further, the ALJ found Plaintiff's mild restrictions in activities of daily living; mild level of difficulty in maintaining social functioning; and mild difficulties in maintaining concentration, persistence or pace did not meet the requirements under subparagraphs C or D (Tr. 696). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.05(C), (D).

Accordingly, the undersigned finds the ALJ properly found Plaintiff's mental impairment(s) did not meet or medically equal Listing 12.05, mental retardation (Tr. 694-95). The ALJ gave Plaintiff the benefit of the doubt by concluding Plaintiff has a severe cognitive disorder, and included the limitations that she found stem from this impairment into Plaintiff's RFC (Tr. 695, 700).

## IV. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge